By the Court.
 

 This is a proceeding in
 
 quo warranto
 
 brought by the prosecuting attorney of Gallia county, whereby it is sought to test the right of the defendant, Alfred W. Davis, as mayor, to hear and determine prosecutions for the violation of ordinances of the city of Gallipolis, as well as causes involving the criminal statutes ,of Ohio.
 

 To the petition a general demurrer has been filed, which raises the basic question in this case, which may be stated as follows:
 

 The city of Gallipolis having no police court, it is contended that by Section 4527, General Code, full power and jurisdiction is conferred upon the defendant, Alfred W. Davis, as mayor, to exercise criminal jurisdiction, the same as mayors of municipalities generally, by virtue of the municipal code. Gallipolis is a charter city, and its form of government is known as the “commission manager
 
 *319
 
 plan. ’ ’ The1 city commission constitutes the governing body, with power to pass ordinances and adopt resolutions, and with certain other broad powers.
 

 Section 8 of the charter makes provision for the selection as president of one of the members of the city commission, and among his duties that section provides as follows:
 

 “The president shall preside at all meetings of the city commission, and perform such other duties consistent with his office as may be imposed by it, and shall have a voice and vote in its proceedings, but no veto. He may use the title of mayor in any case in which the execution of legal instruments or writing or other necessity arising from the general laws of the state so requires, but this shall not be construed as conferring upon him the administrative functions of a mayor under the general laws of Ohio.
 

 “The president of the city commission shall be recognized as the official head of the city for the purpose of serving civil process; by the Governor, for the purpose of Military Law; and for all ceremonial purposes. He may take command of the police and fire departments, and govern the city by proclamation during public danger or emergency, and he shall himself be judge of what constitutes public danger or emergency; however, such a public danger or emergency proclamation of the president of the city commission may be terminated at any time by an affirmative vote of two members of the city commission.
 

 “The powers and duties of the president shall be such as are conferred upon him by this charter
 
 *320
 
 with such others as are conferred by the city commission in pursuance of provisions of this charter and no others.”
 

 Is this official, who is president of the city commission, with the right to adopt the title of mayor, and clothed with certain duties and privileges of the office of mayor, authorized by law to exercise judicial power and authority conferred upon mayors of cities generally by the General Code of Ohio?
 

 The defendant bases his right to exercise the judicial duties of a mayor generally, under the state law, upon the case of
 
 Ide
 
 v.
 
 State,
 
 95 Ohio St., 224, 116 N. E., 450. The syllabus of that case follows:
 

 “A provision in a municipal charter, adopted under authority of Section 7 of Article XVIII of the state Constitution, continuing in force the general laws of the state conferring judicial functions upon mayors of cities and villages, to be exercised by the president of a city commission, who is elected a member of that commission by the qualified electors of the municipality, is not in conflict with any provision of the Constitution of Ohio.”
 

 An examination of this case discloses that the city of Sandusky adopted a charter and provided for a commission manager plan of government. The charter contains many similar provisions to that of the city of Gallipolis, and among those provisions is one relating to the president of the city commission, “who may use the title cf mayor in any case in which the execution of legal instruments of writing, or other necessity arising from the general law of the state, so requires; and who ‘ shall
 
 *321
 
 have the judicial functions of a mayor under the laws of Qhio until such time as such judicial functions can or may be by and under authority of the Constitution and general laws of the state performed by some other officer appointed or elected for that purpose.’ ”
 

 An examination of the charter of the city of Gallipolis discloses no such provision, or saving clause, in which the judicial power of the mayor is especially preserved. Instead of that, at the time of the adoption of the Gallipolis charter provision was made for the exercise of judicial power by a municipal court.
 

 Now, at the time of the election of Davis as city commissioner, the electors of Gallipolis voted for him as such, with a charter providing for a municipal judge, and with no charter provision that one of the commissioners might be called upon to exercise judicial power, as was the case in the city of Sandusky, as disclosed in
 
 Ide
 
 v.
 
 State, supra.
 
 The powers of Davis, as mayor, are strictly limited by the charter of Gallipolis. The administrative duties as provided by state law are denied him. No intention appears by the Gallipolis charter that the so-called mayor should exercise judicial power, the same as mayors generally, under the state law. Indeed, rather the contrary appears, for by Sections 4550 and 4556, General Code, it is provided that the mayor shall receive the same fees as those allowed justices of the peace for similar services (in criminal cases); whereas, the Gallipolis charter makes a special provision by Section 7 that “members of the city commission shall serve without compensation.”
 

 
 *322
 
 Other reasons for the exercise of judicial power by the president of the city commission acting as mayor are urged, under the general state law* Without discussing further any additional reasons, it is sufficient to say that nothing contained in
 
 Ide
 
 v.
 
 State, supra,
 
 warrants us in further extending the conclusions of that case, owing to the express preservation of the judicial power contained in the charter of the city of Sandusky.
 

 The remaining question is whether or not the blanket provisions of Sections 78 and 80 of the charter of the city of Gallipolis are sufficient to warrant the exercise of the judicial power of mayor, as claimed by the defendant-. Sections 78 and 80 of the G-allipolis charter provide in part:
 

 “Section 78. All general laws of the state applicable to municipal corporations which are in effect January 1, 1918, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city commission, shall be applicable to this city; but nothing contained in this charter shall be construed as limiting the power of the city commission to enact any ordinance or any resolution not in conflict with the Constitution of the state, or the express provisions of this charter. * * *
 

 “Section 80. All persons holding office at the time this charter is adopted shall continue in office and in the performance of their duties until provisions have been made otherwise in accordance with this charter for the performance or discontinuance of the duties of any such office. When such provisions shall have been made, the term
 
 *323
 
 of any officer shall expire, and the office be deemed abolished. The powers which are conferred and. the duties which are imposed upon any officer, board, or department of the city under the laws of the state, or under any city ordinance or contract in force at the time of the taking effect of this act, shall, if such office or department is abolished by this charter, be thereafter exercised and discharged by the city commission, officer, board, or department upon whom are imposed corresponding functions, powers and duties of this charter, or by any ordinance or resolution of the city hereafter enacted.”
 

 We think that the intendment of the foregoing sections was to apply to the transition period, when the city passed from government by state law to government by charter, that they were intended to meet situations which might develop by reason of this change, but the conflict between the charter and state law as to the judicial power of the mayor is so apparent that these sections clearly do not relieve the situation. At the time the charter was adopted it provided for the exercise of judicial power- by a municipal court and judge. No saving clause was voted upon by the electors, as was the case in
 
 Ide
 
 v.
 
 State, supra.
 

 Seven years have elapsed since the adoption of the charter, and the government under the charter has functioned apparently satisfactorily, even though the power to- create a municipal court and appoint a judge thereof has been denied by this court. In all other inspects the city government has operated well under the charter.
 

 
 *324
 

 '
 
 Are Sections 78 and 80 broad enough by implication and construction to confer judicial power upon the president of the city commission, so that he may exercise the same jurisdiction as mayors generally under the state law? We are of opinion that they are not.
 

 Entertaining the view that the petition states a cause of action, it becomes our duty to overrule the demurrer, and, there being no further defense to be made, the writ of ouster is allowed.
 

 Writ allowed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.